LAKE-ULRICKSEN CO. *v.* GRAND LODGE I. O. O. F.

PRINCIPAL AND AGENT—CONTRACTS—DIRECTING VERDICT.
In an action for coal which plaintiff claimed to have pro-
vided for use during the construction of a society home
for indigent members or families of defendant, evidence
considered and *held*, to present an issue of fact whether
the board having charge of the construction work author-
ized the purchase of the materials.

Error to Jackson; Parkinson, J.   Submitted June
19, 1914. (Docket No. 23.)   Decided October 2, 1914.

Assumpsit in justice's court by the Lake-Ulricksen
Company against the Grand Lodge of Independent
Order of Odd Fellows for coal sold and delivered.
From a judgment for plaintiff defendant appealed to
circuit court.   Judgment for plaintiff.   Defendant
brings error.   Affirmed.

*Brakie J. Orr,* for appellant.

*John E. Shekell,* for appellee.

MOORE, J.   During the years 1907 and 1908, the
defendant caused to be erected in Jackson, at an ex-
pense of upwards of $30,000, a home for its aged
and indigent members and their widows and orphans.
The contract for the construction of the building was
let to Doland & Co.   The plaintiff furnished materials
that went into the building, and coal which was used
to heat the building during the construction.   The bill,
amounting to more than $2,000, was paid, except the
coal bill, amounting to about $51.   It was to collect
this amount suit was brought in justice's court.   No
contest was made in that court by defendant.   From
a judgment in favor of the plaintiff, an appeal was

taken to the circuit court, where a trial was had before a jury. From a verdict and judgment in favor of the plaintiff of $63.56, the case is brought here by writ of error.

There are many questions argued by counsel for the appellant, but the decisive question is whether the court erred in submitting the case to the jury instead of directing a verdict for the defendant, as requested. As before stated, the defendant let a contract for the construction of the building to Doland & Co. It is the plaintiff's claim that, soon after entering upon the work, this company became financially embarrassed, and that an arrangement was made which we cannot state better than to quote the substance of the testimony of Mr. Ulricksen, a member of the plaintiff company, as follows:

"Shortly after Mr. Doland commenced this building as contractor, Mr. Barr, with whom I had a number of conversations, in one of the earlier or first conversations with me, told me that Mr. Doland had taken the contract at a considerably lower figure than the others, and that he was financially unable to carry on the work, not having any capital; that the board, of which Mr. Washington L. Barr was president, had taken out of Mr. Doland's hand the financial end of the affair; and that, if we continued to furnish material for the building, we should render invoices for each and every item as delivered, and at the end of each month render an itemized statement for Mr. Doland to check up his invoices with, so that he could pass them on to the architect for his approval and estimates, and that payments would be made direct to us by the board of control. This arrangement was carried out absolutely to the letter, and on a number of occasions I personally brought monthly statements to Mr. Doland myself. Payments upon this account were made by mail by checks, as shown here this morning, but in no instance were settlements in full for any monthly statements made; in other words, the checks received were only to apply on account of the previous

statement as rendered. I could explain that more fully by saying that on December 31st we have a credit of $800, which applied on a statement rendered December 1st of $950. * * * Prior to making this payment of $800, we had delivered on November 26th one item of coal and another one on December 23d. These items were included in that statement. When this check was sent for $800, no attention was called to the fact they did not intend to pay for the coal items or any other item, but simply to apply on account. We had another remittance March 12th, which was shown this morning, of $300. Between the payment of the $800 on December 24th and March 12th we delivered three different lots of coal, one on December 9th, $8, one on February 6th, $11.80, and one on February 13, $11.80. There was nothing indicating any items would be kept out. * * * Bills including the coal were rendered every month, and remittances were made while these deliveries were being made, but not for the full amount of the bills rendered. There never was any statement from anybody that the omissions to remit in full were on account of the coal items and on no items never. The first that we knew at all about the coal items having been taken out and eliminated was their last settlement, which was made on July 24, 1908. * * * We have received no remittance from them since then. There is a balance of $55.51 that hasn't been paid for stuff we furnished to the Odd Fellows' Home."

Before this testimony was received, Mr. Barr was called as a witness by the plaintiff. He denied that he had a talk with Mr. Ulricksen of the nature indicated in his testimony, and denied that he had any authority to make any such arrangement. In his testimony the following appears:

"To the best of my recollection I never saw Mr. Ulricksen there only on two different occasions. I know who had charge of the building of that home. It was built by the Odd Fellows of the State of Michigan. The Grand Lodge furnished the money and built the home. It belongs to them, and always has. I was a member of the board of control at the time the home

was built. The board represented the Grand Lodge in the building of the home. I was president of the board of control. The Grand Lodge had the charge of the building of that home, and the board of control represented the Grand Lodge in the building of it, and was given certain money to expend for the building of it. Reports were made to them and through them to the Grand Lodge in the interim. They represented the Grand Lodge in the interim, and, as far as I know, represented the Grand Lodge in the building of the home. I went upon the board in October, 1906, and resigned in October, 1909.

"*Q.* Now, just tell what the board had to do with the building of the home out there, Mr. Barr.  *  *  * What did you have to do with it—your board?

"*A.* There was an architect employed to furnish plans and specifications. Those plans and specifications were accepted by the board of control, and the board advertised for bids, and the contract for the building of the home was let to John L. Doland & Son, of Battle Creek. E. A. Bowd, architect, of Lansing, was employed as supervising architect. We paid the bills upon estimates given from time to time, according to the terms of the contract. I can't tell you who signed the contract with Doland & Sons, whether the board signed it or the officials of the Grand Lodge. The secretary, Mr. Wilde, will be able to tell that. * * *

"*Q.* You made the arrangements; the board of control, you as president, made arrangements with Mr. Doland, didn't you?

"*A.* I should say, yes. The board of control was constituted, I think, at that time, of Mrs. Ida M. Bailey, of Traverse City, R. G. Jackson, of Negaunee, was treasurer, and Theodore Merrill, of Kalamazoo, and Mrs. Addie F. Carpenter, of Grand Rapids—in 1906.  *  *  * It was the duty of this board to make the contract, employ an architect, and see that the home was built. I was president of the board, but had no duties whatever in regard to the home, other than being a member of the board. We simply acted as a committee, and represented the Grand Lodge in the interim of Grand Lodge meetings, making full report of our actions to the Grand Lodge at the proper time, and were given that authority by the Grand Lodge.

"*Q*. Now, after you—you did employ an architect yourself, didn't you?

"*A*. The board did.

"*Q*. You, as president?

"*A*. Yes.  *   *   *   I was represented here in this city by Mr. W. J. Evans, who made weekly and often daily reports to me at my home in Cheboygan, Mich. The estimates of the architect were handed by Mr. Doland to W. J. Evans, of the city of Jackson, who mailed them to me, and I sent them to the secretary. *   *   *   We added extras to the building, new furnishings, and so on, put seats in what we called the assembly room; they were ordered by the board by myself, and paid for on our order from requisitions we drew, out of the funds furnished by the Grand Lodge for the maintenance of the home itself and for permanent improvements."

There was also introduced in evidence three checks, all alike except dates and amounts, one of which reads as follows:

"Union Bank                                    No. 78.

"JACKSON, MICH., Dec. 27, 1907.

"Pay to the order of Lake-Ulricksen Co., $800.00 eight hundred and no/100 dollars.

"GRAND LODGE, I. O. O. F. OF MICHIGAN,

"WASHINGTON L. BARR, Pres.,

"BOARD OF MANAGEMENT, ODD FELLOWS' HOME, BUILDING FUND.

"JOHN A. WILDE, Sec'y."

And a letter which came with the last check, reading as follows:

"July 22/08.

"LAKE-ULRICKSEN CO.,

"Jackson, Mich.

"*Gentlemen:*

"Inclosed please find check for $128.30, balance due for materials furnished John L. Doland & Son, contractors for the Odd Fellows' Home Building at Jackson, Mich.

"This covers the amount of your itemized statement,

182 Mich.—42.

less $55.51 for coal, which you will please present to Mr. Doland for settlement.

"Very truly yours,
"JOHN A. WILDE,
"Sec'y Board of Management."

Explanations were made, on the part of the defendant, as to the giving of these checks and the sending of the letter which it is insisted makes them inadmissible as evidence against the defendant for any purpose.

There is other testimony which we will not quote, which plaintiff insists tends to support its theory that agency has been shown, or at least an appearance of agency upon which it was authorized to act. We think, in view of the relation this board of control sustained toward the procuring of the plans and the making of the contract for the erection of the building, and the dispute between the plaintiff and Mr. Barr, that the question of agency could not be decided as a matter of law, under *Whitaker* v. *Kilroy*, 70 Mich. 635 (38 N. W. 606) ; *Hirschmann* v. *Railroad Co.*, 97 Mich. 384 (56 N. W. 842) ; *Constantine* v. *Beet Sugar Co.*, 132 Mich. 480 (93 N. W. 1088) ; 1 Am. & Eng. Enc. Law (2d Ed.), p. 990, and the many notes thereto.

Judgment is affirmed.

McALVAY, C. J., and BROOKE, KUHN, STONE, OS-TRANDER, BIRD, and STEERE, JJ., concurred.