## COPE-SWIFT CO. *v.* JOHN SCHLAFF CREAMERY CO.

1. APPEAL AND ERROR—EXCEPTIONS TO FINDINGS—CIRCUIT COURT RULE—ASSIGNMENTS OF ERROR—QUESTIONS REVIEWABLE.

    Although, in reviewing a case tried before the court without a jury, Circuit Court Rule No. 45 and 3 Comp. Laws ·1915, § 12586 *et seq.*, were not complied with and therefore the Supreme Court might decline to consider the assignments of error, where appellee raises no objections the case will be considered as though the required procedure had been complied with.

2. CORPORATIONS—POWERS OF PRESIDENT AND GENERAL MANAGER.

    Where the president of a corporation is given power as general manager of the business with full direction and charge thereof, he has the power to do any act or make any contract that the president and ˙general managing agent of such a corporation could do or make in the ordinary transaction of the corporate business, and *prima facie* has power to do any ˙act which the directors could˙ authorize or ratify, unless special limitations or restrictions are put upon such power, of which the party dealing

Presumption that a contract with a corporation is within the authority of its president is discussed in 7 L. R. A. (N. S.) 376.

with him has notice, or unless power to do the particular act is expressly given to another officer or agent.

3. SAME — LIABILITY OF CORPORATION FOR WORK AND MATERIAL ORDERED BY GENERAL MANAGER.

In an action against a creamery company for the balance due for work and material in manufacturing a washing and bottling machine, for use in defendant's business, ordered by the president and general manager, who, with his wife, owned nearly 95 per cent. of the capital stock, where the defense was that the president had no power to bind the corporation by such order, the finding of the court below, that, under the circumstances, defendant was liable, *held*, justified by the record. CLARK and BIRD, JJ., dissenting.

Error to Wayne; Richter (Theodore J.), J. Submitted January 5, 1923. (Docket No. 52.) Decided July 19, 1923.

Assumpsit by the Cope-Swift Company against the John Schlaff Creamery Company for work and labor and materials furnished under a contract for the manufacture of a certain machine. Judgment for plaintiff. Defendant brings error. Affirmed.

*Harry H. Wait*, for appellant.

*Miller, Baldwin & Boos*, for appellee.

SHARPE, J. Plaintiff brought suit to recover for work and labor performed and material furnished under the following written order:

"Detroit, Mich., October 15th, 1918.
"COPE PATTERN WORKS,
"Detroit, Michigan.
"*Gentlemen:*
"Please ship the following to us at above address:
\* \* \*
"All necessary patterns, castings and machine shop work for one Van Horn bottle filling and washing machine, from plans and specifications presented to you by Mr. Almon J. Cordrey.

"Please mail us once each week an itemized statement of the previous week's work.
                    "JOHN SCHLAFF CREAMERY CO.,
                        "Per John Schlaff, Mgr.
"Furnish no goods without written order."

This order was written on the stationery of the defendant company.   After the proofs were closed, by consent of counsel the jury were discharged and the case treated as though it had been tried before the court without a jury.   The procedure on such a trial if review in this court is sought is very clearly pointed out in 3 Comp. Laws 1915, § 12586 *et seq.*, and in Circuit Court Rule No. 45.   Recent decisions calling attention to the necessity of compliance therewith will be found in *Murphy* v. *Bonewell,* 218 Mich. 171, and *Robbins* v. *Simons Sales Co.,* 218 Mich. 569.   No requests for findings were filed.   The trial court, however, filed a "decision" in which certain facts are stated and the law applicable thereto discussed.   We feel that we would be justified in declining to consider the assignments of error for a failure to comply with the statute but, as counsel for the appellee raise no objection, we have concluded to treat the record as a compliance with the required procedure.

The right of the plaintiff to recover is dependent upon the power and authority of John Schlaff to bind the defendant company by the order above set forth. On receipt of the order, plaintiff commenced work pursuant to it.   On November 12th, it mailed to the defendant company an itemized statement of the previous week's work, amounting to $507.56, and others on the 18th, 25th and 30th, amounting in all to $1,380.64. For this it received a check on the bank in which defendant kept its deposits, signed "John Schlaff Creamery Co., John Schlaff, Pres. and Genl. Mgr.," which was duly paid.   Plaintiff afterwards sent statements on December 9th and regularly thereafter

until February 13th, when it was requested to stop work. The defendant company refuses to make further payment, and this suit was brought. The trial court entered judgment for the plaintiff, holding that defendant was legally bound by the order given in its name signed by Mr. Schlaff.

The annual report of the defendant company for the year ending December 31, 1918, was introduced in evidence. It showed that Mr. Schlaff owned 3,275, and his wife 405, shares out of 3,885 shares of stock issued. The board of directors of the defendant company at the time the order in question was given consisted of Mr. Schlaff, William A. Sloan, who owned 5 shares of stock, and Joseph A. Moynihan, who also owned 5 shares. Mr. Schlaff was president and Mr. Sloan secretary and treasurer. Mr. Schlaff was not sworn as a witness. Mr. Sloan, called for cross-examination under the statute, testified that he was connected with an insurance agency and visited the defendant factory but "a couple of trips a week;" that Mr. Moynihan was practicing law but "often came to the office;" that monthly meetings of the board of directors were held; that the order in question was not discussed or its giving authorized at any of such meetings; that Mr. Schlaff was "the chief executive officer in charge of the plant as well as president;" that he "had the right to sign checks and at that time no counter signature was required," no other person could sign them; that he knew the check to plaintiff had been drawn; that it was charged to Mr. Schlaff's personal account; that Mr. Schlaff had the right to order a washing and bottling machine if he wanted it and it pertained to the business.

That the machine in question was one suitable for use in defendant's business admits of no doubt. If it would do what it was expected it would do, the filling and washing of milk bottles would be much expedited

and a considerable saving be thereby effected. We have no doubt that it so pertained to the business in which defendant as a corporation was engaged that its board of directors would have had the power and authority to pay for its construction without authorization by the stockholders. Mr. Schlaff and his wife owned nearly 95 per cent. of the stock of the corporation. The directors were men of his own selection. He had entire charge of its business. The order indicated, on its face, that it was given in the ordinary transaction of corporate business. It was for a machine, useful, if not necessary, in its business. A check of the corporation was sent in payment of the bill first rendered. Of this, the secretary-treasurer had knowledge. That it was charged to Mr. Schlaff's individual account was not communicated to plaintiff. Other bills were sent from week to week as required by the order. These facts, we think, justified the conclusion of law that the corporation was legally liable to pay the balance of plaintiff's claim.

The following rule seems directly applicable to the facts here presented:

"Where the president is given power as general manager of the business with full direction and charge thereof, he has the power to do any act or make any contract that the president and general managing agent of such a corporation could do or make in the ordinary transaction of the corporate business, and *prima facie* has power to do any act which the directors could authorize or ratify, unless special limitations or restrictions are put upon such power, of which the party dealing with him has notice, or unless power to do the particular act is expressly given to another officer or agent." 14A C. J. p. 358.

See, also, *Whitaker* v. *Kilroy*, 70 Mich. 635; *Hirschmann* v. *Railroad Co.*, 97 Mich. 384; *Constantine* v. *Beet Sugar Co.*, 132 Mich. 480; *Lake-Ulricksen Co.* v. *Grand Lodge*, 182 Mich. 653; *Hunt* v. *Motor Devices*

*Co.*, 215 Mich. 483.    See, also, note to *Lloyd & Co.* v. *Matthews*, 7 L. R. A. (N. S.) 376 (223 Ill. 477, 79 N. E. 172, 114 Am. St. Rep. 346).

The judgment is affirmed.

WIEST, C. J., and FELLOWS, McDONALD, MOORE, and STEERE, JJ., concurred with SHARPE, J.

BIRD, J. (*dissenting*).    I am not in accord with the conclusion reached by Mr. Justice SHARPE in this case.    The principal question involved is the authority of the president and general manager, John Schlaff, to execute a certain contract for defendant with plaintiff.    Mr. Justice SHARPE considers the question whether the president and general manager has the authority to order a machine which would wash and re-fill milk bottles.    Inasmuch as defendant was engaged in the business of distributing milk and John Schlaff, president and general manager, was in charge of the business, the conclusion is reached that he had authority to make a contract to purchase it.

This is not exactly the situation.    Schlaff, as president and manager, did not buy nor did he order a bottle washing and re-filling machine.    What he did order from plaintiff was,

"all necessary patterns, castings and machine shop work for one Van Horn bottle filling and washing machine, from plans and specifications presented to you by Mr. Almon J. Cordrey."

It appears that one Van Horn had invented a machine which he claimed would wash, re-fill and cap milk bottles, but he did not have the money to pay the cost of manufacturing one of them.    He got Schlaff interested by transferring a half interest in the patent through one Cordrey, and Schlaff undertook to build a machine and use the company's credit for it.    The machine was never finished and was never delivered to the defendant and no expression is

found in the record that if it had been finished it would have worked.  The cost of making the patterns, castings, machine work, etc., was upwards of $8,000. This sum was several times what a finished machine would have cost after the first cost of making patterns, castings, etc.

The real question, therefore, is whether the president and general manager of a milk distributing corporation has the authority, without the knowledge and consent of the board of directors, to use the funds of the company to experiment and build a machine, that if it proves a success will be useful to it in its business.  Neither the president nor general manager of a corporation has any such power by force of his official title.

"The president of a private corporation is, as the term implies, the presiding officer of its board of directors and of its shareholders when convened in general meeting.

"The office itself, however, confers no power to bind the corporation or control its property.  The president's power as an agent must be sought in the organic law of the corporation, in a delegation of authority from it, directly or through its board of directors, formally expressed or implied from a habit or custom of doing business."   10 Cyc. p. 903.

"Aside from his position as presiding officer of the board of directors and of the stockholders when convened in general meeting, the president of a corporation has, by virtue of his office, merely, no greater power than that of any director.   Whatever authority he has must be expressly conferred on him by statute, charter, or by-law, or the board of directors, or be implied from express powers granted, usage or custom, or the nature of the company's business.   He may be, and frequently is, made the chief executive officer of the company and invested with broad general powers of management and superintendence; and in such case he necessarily has many implied powers. He is without power to do an act which is beyond the objects or purposes of the corporation, or which

has the effect of overruling or revoking the action of the directors." 14A C. J. p. 93.

"The president of a corporation is its executive officer. Within the scope of his duties, as the head of the corporation, he has the power to act without direct authority of the directors. And the president of a corporation, who is its general manager, has authority to adopt and ratify a contract made by himself for the corporation before it was legally created for the performance of services for the company, which he would have power to engage if no previous contract existed. Still the president of a corporation when acting for the corporation is merely its agent and cannot act so as to bind the corporation beyond the scope of his authority, and the fact that he owns a majority of the corporate stock does not itself vest him with any additional authority. The president cannot be regarded as the agent of the corporation for the purpose of ratifying his own acts any more than for conferring authority upon himself in the first instance to make a contract. While the extent of the inherent authority of the president is not clearly defined. it seems to be quite limited; he has no general inherent authority to act as its agent in making contracts, but like other agents, he must derive his authority from the board of directors or from the corporation." 7 R. C. L. p. 450.

No by-law was shown which would confer this power on him, nor was any resolution of the board of directors shown, investing him with this authority, nor was any custom shown which would give him this right. The most that can be claimed for Schlaff's authority was that he was authorized to conduct the business in the usual course. It is very doubtful as to whether this authority would give him the right to purchase a finished machine which would cost $8,000, without the knowledge or consent of the board of directors, when the company was already provided with washing and re-filling machines. But if we concede for the moment that he would have that power, that authority would not carry with it the right to

take the funds of the corporation and experiment with a patent right—to build a machine which no one was certain would work after it was finished, according to the blue prints. This certainly would not be in the usual course of business of a milk-distributing plant.

It further appears that Schlaff himself was the owner of a one-half interest in this speculation. It was transferred to him by Cordrey, and this was quite likely done for the purpose of getting Schlaff to advance the money to make the first machine, which would be the expensive one.

We, therefore, have a situation where the president and general manager of defendant dealt with himself as part owner of the patent and charged the cost of the transaction up to the defendant. The rule in the event of such dealings is as follows:

"Subject to exceptions in favor of innocent parties, the general rule is that acts of officers of a corporation in any transaction in which both a corporation and they themselves individually are interested do not bind the corporation. Thus if the president of a corporation makes a note of the corporation and uses it for his own benefit, the corporation will not be chargeable thereon in favor of the holder, unless the latter occupies the position of a *bona fide* purchaser without notice. Nor is the company bound by its president's acts, where he is clearly acting as the special agent of a third person." 10 Cyc. p. 912.

The plaintiff admitted upon the witness stand that he knew of the defendant company, that he knew it was a milk-distributing concern, and he knew that Schlaff managed the business. This would be ample notice to the plaintiff that the president and general manager of a company that was organized for the purpose of distributing milk would not have the authority to expend the funds of the company to the extent of $8,000, or more, in trying to make a patent right a success.

Being of the opinion that the president and general manager as such of this company had no authority to expend the money for such a purpose, and especially when he was interested in it himself, I think no recovery should be had.

The judgment should be reversed with no new trial, with costs to the defendant.

CLARK, J., concurred with BIRD, J.