FAUST *v*. KENT-MOORE ORGANIZATION, INC.

1. MASTER AND SERVANT—SALES MANAGER—AMOUNT OF SALARY—QUESTION FOR JURY.

Where plaintiff's salary, as sales manager for defendant corporation during 1944, had been $700 a month and he received a bonus of $7,000 at the end of the year and testimony is in dispute as to whether in 1945 he was to receive a salary of $8,400 with bonus, if any, left to discretion of the directors, as claimed by defendant, or $15,400, as claimed by plaintiff, such question was for the jury.

2. CORPORATIONS—AUTHORITY OF PRESIDENT.

Where the president is given power as general manager of a business with full direction and charge thereof, he has the power to do any act or make any contract that the president and general managing agent of such a corporation could do or make in the ordinary transaction of the corporate business, and prima facie has power to do any act which the directors could authorize or ratify, unless special limitations or restrictions are put upon such power, of which the party dealing with him has notice, or unless power to do the particular act is expressly given to another officer or agent.

REFERENCES FOR POINTS IN HEADNOTES

[1] 35 Am. Jur., Master and Servant, §§ 62, 64.
[2] 13 Am. Jur., Corporations, §§ 900, 917, 936.
[2, 3] Power of corporation or its officers with respect to payment of bonus or pension to officers or employees. 164 A.L.R. 1125.
[3] 13 Am. Jur., Corporations, §§ 416, 877.
[4] 35 Am. Jur., Master and Servant, § 64.

3. SAME—APPARENT AUTHORITY OF CO-OWNER—SALARY OF SALES MANAGER.

Where one of two co-owners of stock of corporation had made all of the arrangements with respect to hiring plaintiff as sales manager for the corporation, the co-owners alternated as president and vice-president of the corporation, and no communication was made to plaintiff during nine years of employment as to limitation upon authority of co-owner who had negotiated with plaintiff, he was clothed with apparent authority to fix plaintiff's salary.

4. CONTRACTS—QUANTUM MERUIT.

Where both parties claim there was an express contract of employment but there was a difference as to its terms, questions as to *quantum meruit* are excluded.

5. CORPORATIONS — AUTHORITY OF OFFICER — EVIDENCE — DIRECTED VERDICT.

Where there was evidence to show authority of officer assuming to represent corporation in matter of fixing plaintiff's salary as its sales manager, trial court was in error in directing verdict for defendant on ground of lack of evidence showing such authority.

Appeal from Wayne; O'Hara (Chester P.), J. Submitted January 6, 1949. (Docket No. 25, Calendar No. 44,273.) Decided February 28, 1949. Rehearing denied April 14, 1949.

Assumpsit by Harry L. Faust against Kent-Moore Organization, Inc., for back salary. Directed verdict and judgment for defendant. Plaintiff appeals. Reversed and remanded for new trial.

*Jay F. McMullen* and *Nelson S. Shapero,* for plaintiff.

*Brown, Fenlon & Babcock* (*David A. Goldman,* of counsel), for defendant.

REID, J. Plaintiff brought this action to recover for the balance claimed to be due on his salary for

the first 8 months of 1945. A jury trial was had. The trial court directed a verdict for the defendant corporation on the ground that the plaintiff had not proved that authority had been granted by defendant corporation to John Moore, officer of defendant corporation, to employ the plaintiff. Plaintiff appeals.

J. E. Moore and William A. Kent were partners prior to their forming the defendant Kent-Moore Organization, Inc., a Michigan corporation. After the incorporation, Kent and wife owned one-half of the stock and Moore and wife owned the other half of the stock, excepting for qualifying shares held by Mr. Bowles, secretary and treasurer of the company. Kent, Moore and Bowles constituted the board of directors. Kent and Moore in alternate years held the office of president of the corporation; when one was president, the other was vice-president. Kent and Moore occupied one office in the General Motors building in Detroit. Plaintiff's office adjoined the office of Kent and Moore, and Mr. Bowles' office was next to that of plaintiff.

Mr. Moore hired the plaintiff to work for the corporation in 1936 at $12,000 a year. Kent, Moore, Bowles and plaintiff ordinarily had lunch together each day and among them discussed business affairs of the company. Except Moore, none of the persons interested as officer or stockholder in the defendant corporation ever spoke to plaintiff upon the subject of his employment or the terms thereof, during the employment. The directors did not assume to pass upon the contract of hiring plaintiff that Moore made each year in advance for the ensuing year, but regularly allowed the payments each year after the services had been rendered, at the amounts fixed by Moore.

At varying terms of compensation arranged for each year by Moore, plaintiff continued in the em-

ploy of the defendant corporation from some time in 1936 until about the first of September, 1945. Plaintiff testified:

"I had a conversation with J. E. Moore, in 1944, relative to my salary in 1944. Mr. Moore was part owner of the company. He was president or vice-president. Mr. Moore hired me back in 1936. Mr. Moore was with the company from 1936 until I left the company. Mr. Moore is the only person I had any conversation with relating to my salary. He was the man who employed me."

Plaintiff further testified:

"Q. Then what happened in 1944?
"A. I again talked to Mr. Moore and asked him if he had any intention of increasing my salary.   *   *   *
He said that he would if he had the approval of the salary stabilization board. After [ward] he told me that they had appealed to the board, and an increase in my salary was denied, and my salary would again be $15,400. [It seems that defendant corporation had asked for a raise for plaintiff to $18,400 and that was what the salary stabilization board refused.]  I had a conversation with Mr. Moore in July, 1945, in Mr. Moore's office in the General Motors building at the office of the company when I told him that I had an offer of a better position elsewhere. No one else was present. He offered me stock of his own in the company to remain and I chose not to accept it.
"Q. Did you ever have any specific conversation in 1945 about your salary, about your salary rate?
"A. Only that it was $15,400. That conversation was with Mr. Moore in July when I talked to him about my opportunity to go elsewhere. We talked the amount of my salary back and forth. I was the sales manager of the company. $15,400 a year is $1,283.33 a month. I received $700 a month from the company during 1945. I have $583.33 a month coming to me during 1945. I left at the end of August, 1945. I have eight times $583.33 or $4,666.54 plus

interest at 5 per cent. amounting to approximately $700 interest due me. I spoke to Mr. Moore when I left about this $4,600. He said, 'I want you to have it.' Customarily this $583.33 a month was paid to me at the end of the year."

The annual report of defendant corporation for 1944 showed W. A. Kent, president, J. E. Moore, vice-president, F. E. Bowles, secretary, and F. E. Bowles, treasurer.

The salary of plaintiff for 1944 was $700 a month and at the end of the year he received a bonus of $7,000, making a total for the year of $15,400.

The issue in the case was stated by Mr. Babcock representing the defendant as follows:

"Here in this instance, the plaintiff has sued on the contract. There is not any question but what there was a contract for the employment of the plaintiff. The only question before the court, and the only question framed by the record, under these pleadings, is; What were the terms of the contract? The contract, as the record shows, prior to 1945, was for a salary of $8,400 a year. * * * The only question is, were the terms of that contract changed for the year 1945? And his only proof there of a change is proof of an admitted conversation with Mr. Moore. And he has not shown any authority in Mr. Moore to make a change in the contract."

In other words, was the agreement for the year 1945 that plaintiff should receive a salary of $8,400 with the bonus, if any, left to the discretion of the directors, as claimed by defendant, or was the agreement that plaintiff's salary should be $15,400 for 1945, as claimed by plaintiff? There is a dispute over this question and the question was for the jury. Also in dispute is the authority of Moore to employ plaintiff at $15,400. Plaintiff testified Moore employed him and defendant admits plaintiff was its employee. No other officer or person connected with

defendant did anything about employing plaintiff except Moore. Hence the only question about Moore's authority that remains is whether Moore was authorized to fix the salary at $15,400. None of the other officers of the corporation ever questioned the terms of the employment as fixed by Mr. Moore until after the employment was terminated. Bowles testified that the directors had nothing to do with increasing or decreasing plaintiff's salary.

In the case of *Mayhew* v. *Edward G. Budd Manufacturing Co.*, 258 Mich. 381, plaintiff who had been employed at $700 per month, continued in the employment nearly five years and was paid regularly and in full until the time he was discharged. He set forth in his pleading and testified as a witness that he had a secret agreement with Budd, the president of the defendant corporation, that while his seeming compensation should be as above stated, he was to receive an annual salary of $30,000 a year, and he claimed to have made the secret agreement in 1924 for one year and without being paid at the enhanced rate, to have renewed the agreement for $30,000 a year in secret conferences with Budd in each of the four succeeding years. In that case we say on page 383,

"On this record it ought not to be found that there were the secret agreements, but, assuming they were made, Budd had no power as president to enter into them on behalf of the corporation. Budd was not the corporation. It had a board of directors, which had not abdicated. Budd, it appears, could bind the corporation on employment contracts made in due and usual course of business, but the contracts here asserted were most extraordinary."

Defendant in the case at bar cites and relies upon the *Mayhew Case* but in the case at bar, the total amount that plaintiff claims would be no different.

for the year 1945 from the total paid him in 1944 except that instead of part of the payment being in bonus at the end of the year, he was unconditionally to receive pay for the full amount of $15,400 for the year. Was this agreement claimed by plaintiff for the year 1945 to make what had been bonus become fixed as part of the regular salary, such a change as to be considered under the language of the *Mayhew Case,* "most extraordinary," so that plaintiff must take warning, from the nature of his agreement, of the supposed want of authority on the part of Moore to make the agreement? We think the circumstances of the instant case were very greatly different from the circumstances in the *Mayhew Case.* The total amount to be received in the *Mayhew Case* under the agreement claimed by the plaintiff in that case, was far beyond the total that the directors had any knowledge of during all of the years that plaintiff claimed to have been employed under such greatly enhanced pay. There was evidence in the *Mayhew Case* of a purposeful deception of the directors other than Budd.

In the instant case, plaintiff is not shown to have been cognizant of the fact, if it were a fact, that the other directors were being deceived or that Mr. Moore had exceeded his authority. Further, there was no increase in the total compensation involved. We quote with approval in *Cope-Swift Co.* v. *John Schlaff Creamery Co.,* 223 Mich. 543, at page 547, as follows:

"Where the president is given power as general manager of the business with full direction and charge thereof, he has the power to do any act or make any contract that the president and general managing agent of such a corporation could do or make in the ordinary transaction of the corporate business, and prima facie has power to do any act which the directors could authorize or ratify, unless

special limitations or restrictions are put upon such power, of which the party dealing with him has notice, or unless power to do the particular act is expressly given to another officer or agent." 14A C. J. p. 358.

In the case at bar, the other directors never denied that Moore had authority to employ plaintiff at any such terms as might be reasonable, nor did they refuse payment upon any occasion of salary or compensation agreed to by Moore while acting as their agent. Mr. Kent, the equal co-owner of stock with Mr. Moore, never asserted to plaintiff any authority to act even in the years that Kent was president in the matter of employment of plaintiff but acquiesced in the varying terms of employment for the various years fixed by Moore. Such seems to have been the characteristic method of this particular corporation in carrying on its business. If Moore was in fact a self-constituted agent in the matter of making the bonus a part of the regular monthly salary for 1945, the other officers never warned plaintiff that there was any such limit upon the authority of Moore.

Moore did not take the witness stand to deny any of the statements of Faust, the plaintiff. Kent testified that plaintiff's salary during 1943, 1944 and 1945 was $700 per month and that he never approved any different salary for those years but he did not testify he disapproved of any action of Moore respecting the salary for those years. Neither Kent nor Bowles testified that Moore did not have the authority to hire plaintiff or fix plaintiff's salary for 1945, and the conduct of both Kent and Bowles, as we have seen, clothed Moore with apparent authority to fix plaintiff's salary.

Under all the circumstances of the instant case, the only proper finding should be that Mr. Moore was authorized by the corporation to make whichever contract, that claimed by plaintiff or that

claimed by defendant, the jury should find was the contract that Mr. Moore did make with plaintiff.

Both parties in this case claim there was an express contract of employment. They differ as to its terms. Bowles and Kent testified to some statements of plaintiff that would seem inconsistent with plaintiff's claim as to the salary fixed for 1945. A question arose under the testimony as to the amount of compensation agreed on. That was a question of fact for the jury. Questions as to *quantum meruit* are excluded.

The trial court was in error in directing a verdict in favor of defendant on the ground of "lack of evidence showing authority by the person assuming to represent the corporation." Judgment reversed. The case is remanded to the trial court for a new trial as to the amount of compensation fixed for 1945. Costs to plaintiff.

SHARPE, C. J., and BUSHNELL, BOYLES, NORTH, DETHMERS, BUTZEL, and CARR, JJ., concurred.