## FLETCHER OIL COMPANY *v.* CITY OF BAY CITY.

1. Corporations—Power of President.

   A president of a corporation who is given power as general manager of the business with full direction and charge thereof has the power to do any act or make any contract in the ordinary transaction of the corporate business and prima facie has power to do any act which the directors could authorize or ratify, unless special limitations or restrictions are put upon such power, of which the party dealing with him has notice, or unless power to do the particular act is expressly given to another officer or agent.

2. Same—President—Permission to Lay Water Main Across Property.

   The president of corporate owner of land *held*, to have had power to grant city permission to lay its water main across property in question under facts presented.

3. Licenses—Finding of Trial Court—Water Mains.

   Finding of trial court that president of predecessor corporate owner of plaintiff's property had given city a license to lay its water mains across the property prior to plaintiff's purchase thereof is not disturbed on appeal.

References for Points in Headnotes
[1, 2]  13 Am Jur, Corporations § 897 *et seq.*
[4]  19 Am Jur, Estoppel § 50.
[5]  33 Am Jur, Licenses §§ 99, 100.
[6]  17 Am Jur, Easements § 67.
     33 Am Jur, Licenses § 97.

4. CORPORATIONS—PRESIDENT—WATER MAINS—ESTOPPEL.

Defendant city, claiming an easement in plaintiff's property by virtue of 30 years of continued use of right-of-way for water mains which were laid when the president of predecessor corporate owner gave permission to lay them, is estopped to deny his authority to enter into the agreement.

5. LICENSES—REVOCATION—CONVEYANCE OF PREMISES BY LICENSOR.

A parol license to enter upon the lands of another may be revoked at the will of the owner and is *ipso facto* revoked when the licensor conveys the premises.

6. APPEAL AND ERROR—QUESTIONS REVIEWABLE—NOTICE OF WATER MAIN.

Claim of defendant city in suit to enjoin it from repairing or relocating its water line which had been constructed on premises, now owned by plaintiff, some 30 years ago upon permission, granted by president of predecessor corporate owner that plaintiff had notice that the water main existed at the time the premises were purchased is not considered, where defendant's use of the premises was permissive, there being nothing on record relating to the main and brush and other vegetation obscured the manhole when the premises were inspected by plaintiff's officers at time of purchase.

Appeal from Bay; Dehnke (Herman), J., presiding. Submitted June 8, 1956. (Docket No. 45, Calendar No. 46,851.) Decided September 4, 1956.

Bill by Fletcher Oil Company, Inc., a Michigan corporation, against the city of Bay City, a municipal corporation, and W. J. Meagher & Sons, Inc., a Michigan corporation, to restrain maintenance of water main on its property. Decree for plaintiff. Defendant city appeals. Affirmed.

*Smith & Brooker (Carl H. Smith, Jr.,* of counsel), for plaintiff.

*Bernard S. Frasik (Joseph J. Favazza,* of counsel), for defendant.

SHARPE, J.  This is a chancery action to restrain the city of Bay City and W. J. Meagher & Sons from going upon the lands of plaintiff, Fletcher Oil Company, to alter or repair certain water mains placed there by the city of Bay City.  The following facts are not in dispute:  Prior to 1923 there were 2 separate water systems maintained by the city of Bay City, one on the west side of the Saginaw river and one on the east side of the river.  The city decided to unite both systems into one and appointed a citizens' committee to determine the best place to cross the Saginaw river.  The committee recommended crossing a tract of land owned by the Kneeland-Bigelow Company.  This tract of land consisted of approximately 27 acres.  The downstream end of the property was occupied by buildings, but the upstream part of the land was not so used and to some extent it was grown up with brush and weeds.  It appears that Mr. Charles Bigelow was a member of the committee appointed to recommend a crossing. At that time Mr. Bigelow was president and general manager of Kneeland-Bigelow Company.  It also appears that at the time the committee was considering the matter Mr. Bigelow discussed the proposed crossing with Ray Dawson, superintendent of the waterworks department of Bay City.  Ray Dawson testified:

"I talked with Mr. Bigelow about crossing his property sometime between 1915 and 1920.  I talked to him in the water office located in the city hall.  I made a map showing the 3 places I figured would be best to go across to hook into the east side from the west side.  One of these went across Bigelow's property.

"*Q.* And what did you say to him?

"*A.* I said 'Well, Mr. Bigelow, we figure one of the places will be across your property, how about it?'

"*Q.* And what did he say to you?

"*A.* He says, 'It's all right. Fine.' 'Well,' I said, 'is there any particular place you want us to go across there?' He said, 'I don't care where you go as long as you don't go through the mill.' "

In 1923 the project was completed by crossing over the Kneeland-Bigelow property; however nothing appears in the records of the city or on the corporate books of the Kneeland-Bigelow Company as to what rights were retained by either party.

In 1948 plaintiff Fletcher Oil Company, Inc., purchased the property in question from the Kneeland-Bigelow Company. Nothing appears in the deed to Fletcher Oil Company relating to the water main. Officers of the Fletcher Oil Company testified that they made several inspections of the property before it was purchased and saw nothing to indicate that a water line crossed the property.

A witness for the city testified that there was a roadway along the fence to the manhole cover and that the city had installed several pipes which projected 2 or 3 feet to indicate the route of the water line, but were difficult to see during the summer time because of the grass and weeds.

In 1954 the city of Bay City attempted to relocate the water line, and the instant proceedings were brought to enjoin the city from repairing or relocating the water line. The cause came on for trial, and at its conclusion a decree was entered which contained the following:

"First: That the defendants, city of Bay City, a municipal corporation, and W. J. Meagher and Sons, Inc., a Michigan corporation, are trespassing upon the lands of the plaintiff, Fletcher Oil Company, Inc.

"Second: That the city of Bay City, a municipal corporation, has no right, title or interest whatsoever to maintain its water main upon the lands and premises of the Fletcher Oil Company, Inc.

"Third: That the city of Bay City, a municipal corporation, does not now and never has had in the past any easement to maintain its water main across the lands now owned by plaintiff, Fletcher Oil Company, Inc.

"Fourth: That the plaintiff Fletcher Oil Company, Inc., was a purchaser in good faith of the lands and premises involved from the Kneeland-Bigelow Company and it did not have notice, actual or implied, of the existence of defendant's water main on the premises at the time of purchase."

The relief provided in the decree is, in part, as follows:

"That the defendant, city of Bay City, shall within a reasonable time quit the premises of the plaintiff and remove from said premises the water main and any and all property located there, or in the alternative, the defendant, city of Bay City, shall within a reasonable time institute condemnation proceedings according to law to acquire a right-of-way for its water main and to pay plaintiff the value of said right-of-way as found in said proceeding."

The city of Bay City appeals and urges that the city has a prescriptive right acquired adversely against the then owner of the property. In support of this claim defendant relies upon the fact that the city has had continued and uninterrupted use of the right-of-way since the establishment of the water main in 1923, and has had continuous use of the right-of-way for a period of more than 30 years. Defendant also urges that the consent given by Mr. Bigelow was as an individual and not binding upon the corporation, therefore the city acquired title by adverse possession.

It is conceded that whatever rights the city has in the premises were received from Mr. Bigelow, and it also must be accepted as true that at the time of the conversation between Mr. Bigelow and Mr. Daw-

son that Mr. Bigelow was the president and general manager of Kneeland-Bigelow Company.

Plaintiff urges that the president and general manager of a corporation has prima facie authority to do any act which the directors can authorize or ratify. In *Cope-Swift Co.* v. *Schlaff Creamery Co.*, 223 Mich 543, 547, we had occasion to consider the authority of a president and general manager of a corporation. We there said:

" 'Where the president is given power as general manager of the business with full direction and charge thereof, he has the power to do any act or make any contract that the president and general managing agent of such a corporation could do or make in the ordinary transaction of the corporate business, and prima facie has power to do any act which the directors could authorize or ratify, unless special limitations or restrictions are put upon such power, of which the party dealing with him has notice, or unless power to do the particular act is expressly given to another officer or agent.' 14A CJ, p 358."

See, also, *Moore* v. *Mechanical Products, Inc.*, 323 Mich 478; and *Lorren* v. *Baroda Manfg. Co., Inc.*, 334 Mich 405.

Under the facts as shown in this case, we hold that Mr. Bigelow had the authority to grant permission to the city of Bay City to lay the water line over the property in question. We are in accord with the finding of the trial court that the city of Bay City was given a license to lay its water mains over plaintiff's property. Moreover, defendant is estopped to deny the authority of Mr. Bigelow to enter into the agreement.

In 2 Fletcher's Cyclopedia of the Law of Private Corporations, ch 11, § 489, p 521, the following can be found:

"Who may urge want of power—In general.

"If an officer or agent acts beyond the scope of his actual or apparent powers, the corporation is not bound and may urge the want of power, unless it has ratified the act. If the corporation does not set up want of authority on the part of an officer or agent to bind it by a contract, and does not ratify the contract, the other party thereto cannot raise the objection for the purpose of avoiding the contract."

Similarly, 19 CJS, Corporations, § 1013, p 486, states:

"A third person who deals with another who professes to act as an officer or agent for the corporation is generally estopped, as against the corporation, to deny the character and authority of such officer or agent and the validity of his acts thereunder, *especially where the parties acted under the contract without questioning such authority,* or where the third person through his agent, an officer of the corporation, takes part in the action which is claimed to be invalid." (Emphasis added.)

It is also the rule that a parol license to enter upon the lands of another may be revoked at the will of the owner and is *ipso facto* revoked when the licensor conveys the premises. See *Maxwell* v. *Bay City Bridge Co.,* 41 Mich 453; and *Minneapolis, St. P. & S. S. M. R. Co.* v. *Marble,* 112 Mich 4.

The trial court having found that defendant's use of the premises was permissive, and having affirmed such findings, we do not find it necessary to discuss defendant's claim that plaintiff had notice that the water main existed at the time of the purchase of such premises. The record supports the finding of the trial court. In an opinion the trial court stated:

"The preponderance of the evidence supports plaintiff's claim that it did not know of the existence of the water line until a year or two after it acquired

the property by warranty deed in 1948. There being nothing on record relating to it, the abstract of course could not serve to give notice or warning. I am also satisfied that plaintiff, through its officers, made an inspection of the premises but did not notice the manhole or anything else on the premises which could fairly be construed as putting it on notice of something which needed to be followed up or further inquired into. The photographs received in evidence indicate rather clearly the degree to which brush and other vegetation obscured the manhole at the time under any inspection which did not bring the observer to within a rod or less of the spot on which it is located."

The decree is affirmed, with costs to plaintiff.

DETHMERS, C. J., and SMITH, EDWARDS, BOYLES, KELLY, CARR, and BLACK, JJ., concurred.